AO 91 (Rev. 08/09) Criminal Complaint



## UNITED STATES DISTRICT COURT
for the

Northern District of Oklahoma

FILED

OCT 2 2 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

United States of America
v.

VENKATESWARA CHAGAMREDDY

*Defendant(s)*

)
)
)
)
)
)

Case No. 25-MJ-985 JFJ

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  August 11, 2025, through August 27, 2025   in the county of _____ Delaware _____ in the

Northern District of Oklahoma, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. Section 1343 | Wire Fraud |
| 18 U.S.C. Section 1344 | Bank Fraud |
| 18 U.S.C. Section 1349 | Conspiracy to Commit Wire Fraud and Bank Fraud |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*
Andrew Titsworth

Andrew Titsworth, HSI Task Force Officer
*Printed name and title*

Sworn to before me by phone.

Date:   10/22/25

City and state:          Tulsa, OK

_____
*Judge's signature*

Jodi F. Jayne, United States Magistrate Judge
*Printed name and title*

**Affidavit in Support of an Arrest Warrant
in the Northern District of Oklahoma**

I, Andrew Titsworth, being duly sworn under oath, do hereby depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer (TFO) with Homeland Security Investigations

(HSI), within the Department of Homeland Security. As part of my duties as a HSI

TFO, I investigate violations relating to Smuggling Goods into the United States,

Illegal Importation and Exportation of Firearms, Gangs, and various financial

crimes. I have been a Deputy Sheriff with the Tulsa County Sheriff's Office since

December 2010, prior to being assigned to the HSI Task Force. I completed the HSI

TFO Title 19 training program in Lorton, Virginia, where I received training relative

to general smuggling investigations, smuggling of arms and strategic technology,

gangs, and various surveillance and investigative techniques. I have also received

specialized training in illegal Customs importation and exportation.

2. As part of my duties as an HSI TFO, I investigate criminal violations in the

Northern District of Oklahoma including those relating 18 U.S.C. § 1343 (Wire

Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1349 (Conspiracy to

Commit Wire Fraud and Bank Fraud).

3. I am familiar with the facts and circumstances of this investigation. The facts

set forth in this affidavit are based on my personal observations, knowledge obtained

from other law enforcement officers, my review of documents related to this

investigation, conversations with others who have personal knowledge of the events

and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

4. It is my belief that an individual named VENKATESWARA CHAGAMREDDY an alien whose country of citizenship is India, DOB 09/12/1988, SSN 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 has violated 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud and Bank Fraud), in that in or about August 11, 2025, CHAGAMREDDY and others, known and unknown, (1) devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce. to defraud, and (2) devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property owned by, or under the custody or control of, a financial institution insured by the Federal Deposit Insurance Corporation.

## PROBABLE CAUSE

5. On or about August 25, 2025, the Delaware County Sheriff's Office received a criminal complaint concerning an elderly male by the name of Harry James Ross, indicating that Mr. Ross was the victim of a scheme by which individuals pose as Federal Agents with the United States Department of the Treasury and threaten

victims with criminal charges through phone calls, texts, and emails by means of
transmission by wire, radio, or television communications in interstate commerce in
order to extort the victims for financial gain.

6. Mr. Ross said that on or about August 11, 2025, he contacted a phone number
that he believed to be Microsoft. From my training and experience I know that
persons involved in financial schemes are often located outside of the United States.
While on contact with "Microsoft" he was told that there was criminal activity
located on his computer, and it would need to be turned in to the federal
government. Mr. Ross was then contacted by telephone by an individual identifying
himself as "Alex J Harold" who said that he was a
"federal officer" assigned badge number 8790. "Harold" told Mr. Ross that he was a
supervisor, and that he was going to assign a federal officer to the matter.

7. Mr. Ross was then contacted by telephone by an individual who identified
himself as "Federal Officer David J. Morgan". Mr. Ross had communications with
"David J. Morgan" on phone numbers 507-271-0812 (an area code located in the
State of Minnesota) and 208-371-4823 (an area code located in the State of Idaho).
Based on my training and experience, electronic communications over cellular
devices, including without limitation those involving area codes in other states or
which have been "masked" via communications through a proxy or other device)
involve transmissions by wire, radio, or television communications in interstate or
foreign commerce. This individual told Mr. Ross that Mr. Ross's identity had been
stolen and that the "criminals" had his personal information, social security number,

and fingerprints. The individual told Mr. Ross that this resulted in Mr. Ross being

investigated for federal crimes that appeared to have been committed utilizing his

computer, including child porn, weapons dealings, drugs, and the "dark web" The

individual told Mr. Ross that if he did not follow their "orders" or if he talked to

anyone about being under investigation, they would charge him with the crimes. Mr.

Ross was "sworn to secrecy" and the individual then asked how much money Mr.

Ross had in his bank account.

8. Mr. Ross told the individual that he had $64,331.58 in his bank account. The

individual told Mr. Ross that he would need to speak to the "treasury department"

and placed the line on hold. The individual then returned to the call and told Mr.

Ross that the "treasury department" said that he needed to transfer the money to gold

and an "officer" would come by the following day to pick it up.

9. Once the phone call concluded, Mr. Ross received an email from

fraudprotectiondepartmentftc@gmail.com with attached "documents" concerning

the crimes against him, regarding his conversation with "Officer David Morgan."

The email contained "The Department of the Treasury" Seal, and the signature read

as follows:

> Regards,
> DAVID MORGAN
> Under Secretary of the Treasury
> Terrorism and Financial Intelligence of the United States
> Washington DC

10. On August 14, 2025, Mr. Ross liquidated his Bank of Grand Lake bank

account for $64,331.58 and purchased $63,540.00 in gold from Mid America Coins

in Grove, Oklahoma. The Bank of Grand Lake is insured by the Federal Deposit Insurance Corporation (FDIC). Mr. Ross was contacted by the individual over the course of the next week continuing to represent himself as an "officer", requiring him to meet demands validating his possession of the gold through text message photos of him manipulating the gold, taking pictures with the gold, sending his driver's license on top of the gold, sending pictures of the gold with his driver's license and receipt from the purchase, as well as hand writing his address and identifiers and sending pictures of the handwritten document with the gold.

11. On August 22, 2025, the "officer" demanded through phone calls and texts that Mr. Ross complete a series of similar tasks, as well as send pictures of his house, his roadway, his mailbox, a series of photographs proving he was packaging the gold, and a "selfie" of him holding the taped-up package. The individual instructed Mr. Ross to walk the package down his driveway to the roadway (approximately 200 yards) and take/send a series of specific photographs. Mr. Ross was required to stay on the phone with his "officer" before and during the duration of this transaction.

12. A short time later, Mr. Ross said that "a medium color" African American arrived in a dark-colored "Tundra" and his "officer" told him to approach the vehicle. The driver partially rolled down his window and provided him with "the passcode 4" (the "passcode" provided to Mr. Ross by his "officer"). Mr. Ross handed over the package containing the gold and the vehicle drove away.

13. Mr. Ross said that he was too terrified to attempt to question the individual, too terrified to check for a tag, "too terrified to think".

14. Over the next several days, Mr. Ross was contacted further by his "officer" demanding more money. Mr. Ross was asked if he had any investment accounts and told the individual that he had approximately 1 million dollars in his investment accounts. Mr. Ross was told to speak to his financial advisor, and request $200,000-$300,000, and was told to tell his financial advisor it was for hotels in Hong Kong.

15. Mr. Ross told his "officer" that would raise concerns with his advisor. He was then told the amount required would be $500,000.00 and that he would receive a call at 10:00 a.m. on August 25, 2025, about how it could be delivered.

16. Mr. Ross then contacted his financial advisor and his son Joe Ross. Joe said that he was in fear for his father's life, based on the transaction that had already occurred, as well as the amount of personal information the individual had on Mr. Ross. Joe had taken his father to stay at a safe place and contacted law enforcement.

17. Between August 25, 2025, and August 27, 2025, officers of the Delaware County Sheriff's Criminal Investigation Division (CID), with the cooperation of Mr. Ross, monitored the communications between Mr. Ross and the "officer" and designed a "sting" operation to intercept the pickup of the package at Mr. Ross's residence. The package was intended to contain $177,500.00 in gold and be picked up from Mr. Ross at his residence located at 52550 E 255 Rd., Afton, Oklahoma, on August 27, 2025, at 3:00 p.m. the same way the first package had been picked up.

18. Through cooperation and written consent from Mr. Ross, who was located away from the residence, CID covertly staged inside the home to try to intercept the transaction. Law enforcement was placed with Mr. Ross who was to receive the call

when his "officer" was ready to pick up the gold, and remained on contact with CID

inside the residence, allowing investigators to meet the demands the suspect was

providing to Mr. Ross.

19. Once law enforcement was able to meet the demands of the individual

speaking with Mr. Ross, a silver car pulled up to his driveway. Mr. Ross was then

told to bring the package out to the road, which he refused to do. After a short

period, the vehicle backed up, so that it could turn into the driveway. The vehicle

traveled the length of the winding dirt driveway, approximately 200 yards from the

front porch, which contained a "dummy" package with the same descriptors the

suspects were provided.

20. The vehicle pulled past the porch to the side of the house and was attempting

to reposition. Once the officers inside were able to affect enforcement measures

safely, they exited the residence and surrounded the suspect vehicle, arresting an

individual later identified as Venkateswara CHAGAMREDDY, DOB 09/12/1998.

21. CHAGAMREDDY was on the phone at the time of his arrest, and the call

was left connected to his vehicle. Once in custody, Investigators observed an

apparent "3-way call" still connected, on the display of his device and the screen of

his vehicle, connected through "WhatsApp" with a display name "Rio". Investigators

confirmed through Mr. Ross that he was still on the phone with "officer Morgan"

who was advising him that his officer was at his house to pick up the package. He

continued to advise that he could see that his "officer" was there, but he was not

answering.

22.  Investigators confirmed that the duration of the phone call was consistent with that of the call between Mr. Ross and "officer Morgan" who continued to communicate with Mr. Ross after the apprehension of CHAGAMREDDY, prior to disconnecting the call and placing the phone on "airplane mode" to preserve contents.

23.  Upon the initial inventory of the vehicle, Investigators detected a strong odor of marijuana, and observed in plain view of the open driver side door panel a burned/partially smoked marijuana cigarette with no packaging or container, which is typically indicative of either larger amounts of marijuana, more commonly stored, within the vehicle, or otherwise taken from a larger source elsewhere deliberately purposed to consume while driving. As a result, the inventory of the vehicle was made, which yielded the following:

> 23 1-ounce gold pieces
> 1 Marijuana grinder
> Rolling papers
> 1 "Makeshift" paper envelope with ground marijuana
> 5 $100.00 bills
> 2 Cellular Devices
> Multiple documents indicating flights, travel patterns, and interstate travel.

24.  A custodial interview was conducted with CHAGAMREDDY by Captain Keshia Oberg and Agent RJ Lashar of the Oklahoma Attorney General's Office. CHAGAMREDDY waived Miranda and agreed to speak with Investigators and also signed a consent to search concerning his cellular device. CHAGAMREDDY stated he was in the United States on a  student visa and was at risk of deportation due to a recent suspension from college. CHAGAMREDDY said that he had flown

to North Carolina the previous day to try to enroll in a college and had left his
vehicle parked at the Austin airport. He then said that that when he returned late that
same day, he just "found" the gold (23 1-ounce gold pieces) in his car, and that he did
not know how it got there.

25.  CHAGAMREDDY said that he had a friend only identified as "Rio" and he
was taking the gold to his house in Kansas because "Rio" knew what to do with it.
He said that he took a wrong turn, and ended up at Mr. Ross's residence by accident.
He said he was not there for any reason, and was just using the driveway to turn
around, because "Rio" was helping him find his way.

26.  During the custodial interview, while executing the consensual search of the
cellular device, Captain Oberg observed a series of photographs sent and received
from "WhatsApp" that were apparently stored during the time of the operation that
resulted in the arrest. These pictures included a photograph from the cattle gate
enclosing the road attached to Mr. Ross's property from the county road 1 mile north
of Mr. Ross's residence, which coincided with the timestamp of Mr. Ross telling law
enforcement that the "officer" was about 4 minutes away; a photograph of the
County Road street sign identifiers, which coincided with the timestamp of Mr. Ross
advising law enforcement that the "officer" wanted him to walk to the end of his
driveway; a photograph of a residence adjacent to Mr. Ross' of two people sitting on
their front porch, which coincides with the timestamp of Mr. Ross advising law
enforcement that "the officer" is there and said there was "two people outside"; a
photograph of the dummy package towards the roadway, taken by Investigators

inside the residence for Mr. Ross to send to his "officer"; as well as a photograph of Mr. Ross' residence from the roadway, where the package can be seen on the porch, coinciding with the timestamp of Mr. Ross advising law enforcement that he was told he is there and wants it brought to the roadway. Additionally, Mr. Ross' residential address of 52550 E 255 RD, AFTON, OKLAHOMA was the last destination searched and was visible on the navigation screen at the time his device was placed on airplane mode.

27.    Captain Oberg also observed multiple videos of CHAGAMREDDY opening and audibly inventorying packages of gold, including the package he said "showed up" in his vehicle while it was parked at the Austin Airport that Investigators recovered at the time of his arrest.

## CONCLUSION

Based on the information set forth in this affidavit, I submit there is probable cause to believe that that an individual named VENKATESWARA CHAGAMREDDY an alien whose country of citizenship is India, DOB 09/12/1988, SSN 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 has violated 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud and Bank Fraud), in that in or about August 11, 2025, CHAGAMREDDY and others, known and unknown, (1) devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce.

to defraud, and (2) devised or intended to devise a scheme or artifice to defraud, or

for obtaining money or property owned by, or under the custody or control of, a

financial institution insured by the Federal Deposit Insurance Corporation. All of

these offenses occurred in the Northern District of Oklahoma.

Respectfully submitted,

*Andrew Titsworth*

Andrew Titsworth
Task Force Officer
Homeland Security Investigations
Department of Homeland Security


Subscribed and sworn via phone on the 22nd day of October_____, 2025.



Jodi F. Jayne
UNITED STATES MAGISTRATE JUDGE